**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

**NEW ORLEANS EMPLOYERS**                               **CIVIL ACTION**
**INTERNATIONAL LONGSHOREMEN'S**
**ASSOCIATION, AFL-CIO**
**PENSION FUND ET AL**

**VERSUS**                                              **NO. 22-2566**

**UNITED STEVEDORING OF**                               **SECTION "B"(1)**
**AMERICA, INC. ET AL**

<u>**ORDER AND REASONS**</u>

Before the Court are defendants United Stevedoring of America Inc. and American Guard

Services Inc.'s motion to compel arbitration and to stay proceedings (Rec. Doc. 32), plaintiffs New

Orleans Employers International Longshoremen's Association, AFL-CIO Pension Fund and its

administrator Thomas R. Daniel's opposition (Rec. Doc. 36), and defendants' reply (Rec. Doc.

58). For the following reasons,

**IT IS ORDERED** that defendants' motion to compel arbitration and to stay proceedings

(Rec. Doc. 32) is **DENIED**.

I.      <u>**FACTUAL BACKGROUND AND PROCEDURAL HISTORY**</u>

Over a year ago, plaintiffs New Orleans Employers International Longshoremen's

Association, AFL-CIO Pension Fund and its administrator Thomas R. Daniel filed their

withdrawal liability complaint, pursuant to the civil-enforcement instructions in ERISA. Rec. Doc.

1. Plaintiffs claim $2,833,389.00 owed by defendants for complete withdrawal from the plaintiffs-

administered pension fund in March of 2021. *Id.* at 1. United Stevedoring of America, Inc. (a

Florida corporation) and American Guard Services, Inc. (a California corporation) allegedly share

a principal business establishment at 2475 Canal Street #211, New Orleans, LA 70119.[1] *Id.* at 3. Plaintiffs believe common ownership and control exist in the two corporations, so as to constitute a "controlled group" and to open defendants to single-employer treatment for withdrawal liability. *Id*.

In 2016, plaintiffs and United Stevedoring of America, Inc. ("USA") entered a memorandum of agreement, detailing fund benefits provided by plaintiffs and employer contributions supplied by USA, pursuant to USA's collective bargaining agreement ("CBA"). *Id.* at 4. USA remained current on its payments until March 2020, when its cruise ship-services business was suspended due to COVID-19. *Id.* A year later, in March 2021, USA's stevedoring contract was terminated, at which time it allegedly effected a complete withdrawal from the pension fund. *Id.*

Plaintiffs noticed USA of the withdrawal assessment and demanded payment on February 1, 2022, beginning a sixty-day deadline for USA to provide an initial installment. *Id.* at 5. After USA made a verbal request for additional information, plaintiffs provided a "Formal Response to the Request for Additional Information/Administrative Review," beginning a sixty-day deadline for either party to initiate arbitration on the claim. *Id*. When the time for the initial payment expired, plaintiffs informed USA of its need to cure its defect within sixty days. *Id.* at 6. Indisputably, no withdrawal-liability payment was ever made. *Id*. At contention—and at the heart of the current motion—is whether USA ever initiated arbitration proceedings.

Arbitration, however, has not always been hotly contested in this case. In their joint answer, USA and American Guard Services, Inc. ("AGS") both acknowledge the Court's proper

---

[1] Plaintiffs name the address as United Stevedoring of America, Inc.'s principal place of business, but only as American Guard Services, Inc.'s "principal business establishment."

jurisdiction through ERISA and "admit that it [sic] has not sought arbitration and that 29 U.S.C. § 1401 speaks for itself." Rec. Doc. 10 at 3, 5. Nonetheless, defendants also claimed as one of their twenty-four affirmative defenses that "Plaintiffs' claims are barred, in whole or in part, for failure to exhaust all administrative remedies." *Id.* at 6.

Over eight months after the complaint and four months after the initial scheduling order, defendants' counsel filed a motion to withdraw. Rec. Doc. 19. Plaintiffs offered no opposition to a trial continuance due to the enrollment of new counsel, Rec. Doc. 24 at 2, and the Court so ordered, Rec. Doc. 25. Since the new scheduling order, however, discovery between the parties has progressed slowly, as evidenced by Magistrate Judge van Meerveld's recent grant of plaintiffs' motion to compel substantive responses from the defendants. Rec. Doc. 40. Apparently, defendants' discovery delays were driven by its belief that arbitration controlled the complaint. *See* Rec. Doc. 28-7 at 1 ("General Objection. Defendants object generally to participation in discovery herein as premature because applicable law requires that pension withdrawal liability issues 'shall' be subject to arbitration and Defendants do not waive arbitration and have demanded and initiated same."); Rec. Doc. 28-8 (same). During this time, defendants filed for arbitration through the American Arbitration Association. Rec. Doc. 32-4 (June 14, 2023).

## II.  MOTION TO COMPEL ARBITRATION AND TO STAY PROCEEDINGS

Plaintiff's action for withdrawal liability is brought pursuant to the Employee Retirement Income Security Act of 1974 ("ERISA"), as amended by the Multiemployer Pension Plan Amendments Act of 1980 ("MPPAA"), 29 U.S.C. § 1381 *et seq*. Defendants' motion to compel arbitration and stay proceedings, in turn, is founded on the statutory language in ERISA and MPPAA.

3

When an employer withdraws from pension plan obligations, it is liable for "the allocable amount of unfunded vested benefits." 29 U.S.C. § 1381(b)(1). Matters associated with this withdrawal liability—such as whether a withdrawal has occurred and what the proper amount of liability is—are resolved through arbitration. 29 U.S.C. § 1401(a)(1) ("Any dispute between an employer and the plan sponsor of a multiemployer plan concerning a determination made under sections 1381 through 1399 of this chapter shall be resolved through arbitration."). Either the plan sponsor or the employer "may initiate the arbitration proceeding." *Id.* When a plan sponsor has reviewed questions from the employer about withdrawal liability and provided a basis for its determinations, arbitration must be initiated within sixty days. *Compare id.* § 1401(a)(1)(A) *with id.* § 1399(b)(2)(B). When the plan sponsor does not supply reasons for its determinations, arbitration must be initiated within 180 days of the employer's questions to the plan sponsor. *Compare id.* § 1401(a)(1)(B) *with id.* § 1399(b)(2)(A) (providing a ninety-day deadline for the employer to raise questions of the plan sponsor).

Failure to timely initiate arbitration has significant consequences for the employer:

> If no arbitration proceeding has been initiated pursuant to subsection (a), the amounts demanded by the plan sponsor . . . shall be due and owing on the schedule set forth by the plan sponsor. The plan sponsor may bring an action in a State or Federal court of competent jurisdiction for collection.

*Id.* § 1401(b)(1). Likely due to the harshness of the rule, little circuit case law has developed on the failure to initiate arbitration.[2] The statutory text, however, makes clear both the arbitration

---

[2] While noting the Fifth Circuit had not reached the issue, another section of the Eastern District of Louisiana recently suggested that an initiation failure effectively "preclude[d] the employer from raising the [withdrawal liability] issue in district court." *New Orleans Emps. Int'l Longshoremen's Assoc., AFL-CIO Pension Fund v. Mar. Sec., Inc.*, No. CV 17-7430, 2019 WL 342440, at *3 (E.D. La. Jan. 28, 2019) (Zainey, J.) (citing *Tsareff v. ManWeb Servs., Inc.*, 794 F.3d 841, 850 (7th Cir. 2015) and granting plaintiffs' motion for summary judgment "[e]ven if the issue were not waived for failure to exhaust").

deadlines and the consequences for neglecting them. Beyond-deadline arbitration demands are improper. *See, e.g., Emp.-Teamsters Loc. Nos. 175 & 505 Pension Tr. Fund v. Mountaineer Distrib. Co.*, No. CV 2:06-0322, 2007 WL 9718423, at *4 (S.D. W. Va. Mar. 5, 2007) ("[B]ecause defendant failed to initiate arbitration within the time period mandated by statute, the court cannot grant defendant's motion to remand the case for arbitration.").

Given the time requirements, initiation is key. ERISA not only chooses "initiation" uniformly, but it also describes the initiation steps. 29 C.F.R. § 4221.3. Parties may agree to additional arbitration details, but the ERISA initiation requirements otherwise bind. *Id.* § 4221.3(b).

A party that unilaterally initiates arbitration, for instance, must supply the other party notice. *Id.* § 4221.3(c). When the employer is the initiator, the notice "shall include in the notice of initiation a statement that it disputes the plan sponsor's determination of its withdrawal liability and is initiating arbitration." *Id*. § 4221.3(d). If the initiating party is deficient, the burden is on the other party to "object promptly in writing[, or] . . . it waives its right to object." *Id*. § 4221.3(e).

Approached from the opposite end of the litigation spectrum, at least one federal district court has held that a premature federal suit filing does not toll the time the non-moving party has to initiate arbitration. *Trustees of The Sheet Metal Workers' Loc. Union No. 80 Pension Tr. Fund v. W.G. Heating & Cooling*, 555 F. Supp. 2d 838, 854–55 (E.D. Mich. 2008) ("Because the time for an arbitration demand had not expired, the withdrawal liability payments were not 'due and owing' at the time the plaintiff filed its complaint. But the Court does not see how that premature filing prevented the defendant from demanding arbitration at any time through the December 20 deadline.").

In this case, the motion to compel presents a singular question: did defendants timely *initiate* arbitration? Parties agree that plaintiffs responded to USA's request for additional information on April 12, 2022. *See* Rec. Doc. 32-1 at 3; Rec. Doc. 36 at 2. This action started a sixty-day clock for USA to initiate arbitration, running until June 11, 2022. Thus, as to USA, defendants' recent arbitration filing with the American Arbitration Association is untimely by over a year. Rec. Doc. 32-4 (June 14, 2023).[3] As to AGS, defendants contend the purported "controlled group" member was not notified until July 27, 2022. Rec. Doc. 32-1 at 4. Taking that date as a starting point, AGS would have had a maximum of 180 days—or until January 23, 2023—to initiate arbitration. Neither USA nor AGS initiated arbitration before their statutorily defined deadlines.

In their answer, defendants agree: "Defendants admit that it [sic] has not sought arbitration and that 29 U.S.C. § 1401 speaks for itself." Rec. Doc. 10 at 5. Without even mentioning—much less attempting to distinguish—this statement to the Court, however, defendants now suggest they had indeed *initiated* arbitration timely. To convince the Court that one could "initiate" arbitration without having "sought" it would be an exercise in the finest of semantics. Undeterred, defendants claim USA's follow-up email to a June 2, 2022 telephone conference with plaintiffs is sufficient to show the action of initiation. Rec. Doc. 32-1 at 3. Specifically, one sentence in the email applies

---

[3] Defendants' reply memorandum raises COVID-19-related argument for an extension to initiate arbitration. *See* Rec. Doc. 58 at 3–4. Contrary to their assertions, however, there was no executive agency action that suspended ERISA defaults beyond one year. *See* U.S. DEP'T OF LAB., EBSA DISASTER RELIEF NOTICE 2021-01 (Feb. 2, 2021) (liability beginning "*the earlier of* (a) 1 year from the date they were first eligible for relief, or (b) 60 days after the announced end of the National Emergency (the end of the Outbreak Period)") (emphasis added). Touching on that subject, earlier this year, the Southern District of New York refused consideration of the impact that business disruption from COVID-19 pandemic might have on ERISA withdrawal liability, finding for the pension plan in an action never brought to arbitration. *Trustees of New York Dist. Council of Carpenters Pension Fund v. Expo Advantage USA, Inc.*, No. 22-CV-7693 (PKC), 2023 WL 2330381, at *1 (S.D. N.Y. Mar. 2, 2023).

to the question of arbitration: "You agreed to provide [defendants] with a list of arbitrators who may be able to help facilitate this process." Rec. Doc. 32-3.

To bolster their argument that such a writing is sufficient to initiate arbitration, defendants marshal one case, *American Federation of Musicians & Employers' Pension Fund v. Neshoma Orchestra & Singers, Inc.*, from the United States Second Circuit Court of Appeals. A per curiam opinion of a sister circuit, *Neshoma* dealt with an employer that was noticed with withdrawal liability but that failed to comply with all the arbitration rules agreed upon by the parties. *Am. Fed'n of Musicians & Employers' Pension Fund v. Neshoma Orchestra & Singers, Inc.*, 974 F.3d 117, 120 (2d Cir. 2020). The employer in *Neshoma* claimed compliance with the parties' arbitration rules by its submission of a letter that stated in part "please consider this letter as a demand for arbitration." *Id.* at 121. The Second Circuit rejected the assertion, not on the language of the letter but because the parties expressly had agreed to arbitrate through the American Arbitration Association. *Id.* at 122. The appellate court did not counter the employer's assertion that its letter "met the minimal requirements of an arbitration demand." *Id.* (quotation omitted).

The case, however, is inapposite. The formality and clarity of the *Neshoma* employer's letter far outstrips the email correspondence produced by defendants. The *Neshoma* employer provided a "demand for arbitration." Defendants, instead, seek arbitrator recommendations.

Defendants contend, however, that they could seek only so much, with their initiation attempts cabined by the agreed-upon language in the pension plan. *See* Rec. Doc. 32-1 at 4. Admittedly, the text of Section 10.5 is far from crystalline. However, in their search for exceptional restraints, defendants apparently overlook the presence of the default rules, found at the head of the section: "If an Employer withdraws from the Plan in either a complete or partial withdrawal, the Employer will be liable to the Plan for payment of its withdrawal liability, *consistent with the*

*requirements under ERISA.*" Rec. Doc. 33-2 at 6 (emphasis added). The section continues similarly in its treatment of arbitration, requiring disputes to "be *submitted to arbitration under Section 4221 of ERISA*, to be conducted in accordance with rules adopted by the Trustees not inconsistent with regulations issued by the Pension Benefit Guaranty Corporation." *Id.* (emphasis added). Defendants may rightly contend they were unaware of specific trustee rules. *See* Rec. Doc. 32-1 at 4. However, nothing in the section supports their contention that they were divested of their right to initiate arbitration. Having failed to timely initiate arbitration, defendants cannot attempt to reset the clock through a strained textual reading of their agreement.

Finally, insofar as defendants' motion also requests a ruling on interim withdrawal payments, such a decision is moot. The interim payment provision in 29 U.S.C. § 1399(c) (2) applies to claims moving through the MPPAA's arbitration scheme.

Based on foregoing reasons, arbitration is no longer available.[4]

New Orleans, Louisiana this 2nd day of November, 2023

_____
SENIOR UNITED STATES DISTRICT JUDGE

---

[4] Defendant AGS's controlled group liability and its status vis-à-vis defendant USA do not affect findings that defendants failed to timely initiate arbitration. However, a separate analysis of such liability will be made in the context of pending related summary judgment motions by the parties.