**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

**NEW ORLEANS EMPLOYERS**                                    **CIVIL ACTION**
**INTERNATIONAL LONGSHOREMEN'S**
**ASSOCIATION, AFL-CIO**
**PENSION FUND ET AL.**

**VERSUS**                                                              **NO. 22-2566**

**UNITED STEVEDORING OF**                                    **SECTION "B"(1)**
**AMERICA, INC. ET AL.**

<u>**ORDER AND REASONS**</u>

Before the Court are defendants American Guard Services, Inc. and United Stevedoring of America, Inc.'s motion for reconsideration of the Court's Order and Reasons at Record Document 73 regarding their motion to compel arbitration (Rec. Doc. 80), plaintiffs New Orleans Employers International Longshoremen's Association, AFL-CIO Pension Fund and its administrator Thomas R. Daniel's response (Rec. Doc. 82), and defendants' reply (Rec. Doc. 85); defendants' motion for reconsideration of the Court's Order and Reasons at Record Document 76 regarding plaintiffs' motion for summary judgment (Rec. Doc. 81) and plaintiffs' response (Rec. Doc. 86); and defendants' motion in limine to exclude Segal Blend evidence (Rec. Doc. 75). For the following reasons,

**IT IS HEREBY ORDERED** that defendants American Guard Services, Inc. and United Stevedoring of America, Inc.'s motion for reconsideration of the Court's Order and Reasons at Record Document 73 regarding their motion to compel arbitration (Rec. Doc. 80) is **DENIED**.

**IT IS FURTHER ORDERED** that defendants American Guard Services, Inc. and United Stevedoring of America, Inc.'s motion for reconsideration of the Court's Order and Reasons at Record Document 76 regarding plaintiffs' motion for summary judgment (Rec. Doc. 81) is **DENIED**.

1

**IT IS FURTHER ORDERED** that defendants American Guard Services, Inc. and United Stevedoring of America, Inc.'s motion in limine to exclude Segal Blend evidence (Rec. Doc. 75) is **DISMISSED AS MOOT**.

## I.   FACTS AND PROCEDURAL HISTORY

In August 2022, plaintiffs New Orleans Employers International Longshoremen's Association, AFL-CIO Pension Fund and its administrator Thomas R. Daniel filed their withdrawal-liability complaint, pursuant to the civil-enforcement instructions in ERISA. Rec. Doc. 1. Plaintiffs claim that $2,833,389.00 is owed by defendants due to their complete withdrawal from the plaintiffs-administered pension fund in March of 2021. *Id.* at 1. Plaintiffs further contend common ownership and control exist in United Stevedoring of America, Inc. (USA) and American Guard Services, Inc. (AGS), so as to constitute a "controlled group" and open defendants to single-employer treatment for withdrawal liability. *Id.* at 3.

In 2016, plaintiffs and USA entered a memorandum of agreement, detailing fund benefits provided by plaintiffs and employer contributions supplied by USA. *Id.* at 4. USA remained current on its payments until March 2020, when its cruise ship-services business was suspended due to COVID-19. *Id.* A year later, in March 2021, USA's stevedoring contract was terminated, at which time it allegedly effected a complete withdrawal from the pension fund. *Id.*

Plaintiffs noticed USA of its $2,833,389 withdrawal assessment and demanded payment on February 1, 2022, beginning a sixty-day deadline for USA to provide an initial installment. *Id.* at 5. After USA made a verbal request for additional information, plaintiffs provided a "Formal Response to the Request for Additional Information/Administrative Review" on April 12, 2022, beginning a separate sixty-day deadline for either party to initiate arbitration on the claim. *Id.* When the time for the initial payment expired, plaintiffs informed USA of its need to cure its

default within sixty days. *Id.* at 6. Indisputably, no withdrawal-liability payment was ever made. *Id.*

Defendants, however, challenged whether arbitration was initiated. *See* Rec. Doc. 32. Their motion to compel arbitration arrived at the court over a year after the federal proceedings began. The later-in-time motion also contradicted defendants' previous pleadings. In their joint answer, USA and AGS both acknowledge the Court's proper jurisdiction through ERISA and "admit that it [sic] has not sought arbitration and that 29 U.S.C. § 1401 speaks for itself." Rec. Doc. 10 at 3, 5. Nonetheless, over seven months after their answer, defendants filed for arbitration through the American Arbitration Association. Rec. Doc. 32-4 (June 12, 2023).[1] In denying defendants' motion to compel arbitration, this Court found that USA had until June 11, 2022 and AGS possibly had until January 23, 2023 to compel arbitration. Rec. Doc. 73 at 6. "Neither USA nor AGS initiated arbitration before their statutorily defined deadlines." *Id*. A week later, the Court also considered parties' competing motions for summary judgment, denying defendants' and granting plaintiffs'. *See* Rec. Doc. 76. Applying the statutory rules of Employee Retirement Income Security Act of 1974 ("ERISA"), as amended by the Multiemployer Pension Plan Amendments Act of 1980 ("MPPAA"), we found a binding contract between plaintiffs and USA, withdrawal liability of USA, and controlled group liability of USA and AGS. *Id*. While acknowledging the "harsh result," we noted "federal courts uniformly agree that failure to raise the defense of withdrawal liability amount in arbitration precludes the raising of the defense at the district court." *Id.* at 7.

Defendants now request reconsideration of both Orders.

---

[1] The Court incorrectly dated the arbitration attempt as "June 14, 2023" in our Order & Reasons denying defendants' motion to compel arbitration. *See* Rec. Doc. 73 at 6. However, as is evident in our reasoning there and our affirmation of it here, the two-day difference does not affect the outcome.

II.  **LAW AND ANALYSIS**

### A.  Motion for Reconsideration Standard

The Federal Rules of Civil Procedure do not specifically provide for motions for reconsideration. *Shepherd v. Int'l Paper Co.*, 372 F.3d 326, 328 n.l (5th Cir. 2004). Nevertheless, a party may submit a motion seeking reconsideration under Federal Rule of Civil Procedure 54(b), 59(e), or 60(b) depending on the circumstances. Fed. R. Civ. Proc. 54(b); *Zahid Hotel Grp., LLC v. AmGUARD Ins. Co.*, No. 22-2792, 2023 WL 8773474, at *2 (E.D. La. Dec. 19, 2023). Unlike Rules 59(e) and 60(b), Rule 54(b) does not deal with final judgments but with revisions of interlocutory orders, providing a more flexible standard for district court review. *See Austin v. Kroger Texas, L.P.*, 864 F.3d 326, 336 (5th Cir. 2017) (quotation omitted) ("Under Rule 54(b), the trial court is free to reconsider and reverse its decision for any reason it deems sufficient, even in the absence of new evidence or an intervening change in or clarification of the substantive law."). "Although a less exacting standard applies [to Rule 54(b) motions], courts look to similar considerations as those it considers when evaluating Rule 59(e) motions." *Edwards v. Take Fo' Recs., Inc.*, No. 19-12130, 2020 WL 3832606, at *11 (E.D. La. July 8, 2020). Considerations include "(1) an intervening change in the controlling law, (2) the availability of new evidence not previously available, or (3) a manifest error in law or fact." *AIG Specialty Ins. Co. v. Agee*, No. 22-5410, WL 8283602, at *2 (E.D. La. Nov. 30, 2023) (quoting *Henry v. New Orleans La. Saints, L.L.C.*, No. 15-5971, 2016 WL3524107, at *2 (E.D. La. June 28, 2016)).

No matter the standard, a motion for reconsideration should be denied when the movant merely rehashes legal theories and arguments that were raised before the entry of the judgment. *See Templet v. HydroChem Inc.*, 367 F.3d 473, 478–79 (5th Cir. 2004); *Brewer v. BP Expl. & Prod., Inc.*, No. 17-3079, 2023 WL 2969046, at *2 (E.D. La. Apr. 17, 2023), *appeal dismissed*,

No. 23-30331, 2023 WL 7646700 (5th Cir. Aug. 7, 2023) (quotation omitted) ("Like Rule 59(e) motions, Rule 54(b) motions are not the proper vehicle for rehashing evidence, legal theories, or arguments that could have been offered or raised before the entry of judgment."); *see also McClendon v. United States*, 892 F.3d 775, 781 (5th Cir. 2018) ("Whereas Rule 59(e) applies only to final judgments and does not permit consideration of arguments that could have been raised previously, Rule 54(b) applies to interlocutory judgments and permits the district court to reconsider and reverse its decision for any reason it deems sufficient."). In its discretionary consideration of motions for reconsideration, the district court should promote "the just, speedy, and inexpensive determination of every action and proceeding." *Austin*, 864 F.3d at 337 (quoting Fed. R. Civ. Proc. 1).

Where the court's order would not end the action, the motion for reconsideration arises under the more flexible Rule 54(b). *See McClendon v. United States*, 892 F.3d 775, 781 (5th Cir. 2018). Here, the Court's Order and Reasons denying defendants' motion to compel arbitration (Rec. Doc. 73) is an interlocutory order, leading to an application of Rule 54(b) to defendants' current motion for reconsideration (Rec. Doc. 80). However, our grant of plaintiffs' summary judgment (Rec. Doc. 76) effectively ended the current action, with only determination of the proper amount of additional relief remaining. Nonetheless, even if a more lenient standard were applied to defendants' motion for reconsideration of our grant of summary judgment (Rec. Doc. 81), our analysis would lead to the same conclusion. Both motions for reconsideration merely rehash argumentation already considered by the Court.

**B. Motion for Reconsideration of the Court's Order and Reasons at Record Document 73 regarding defendants' motion to compel arbitration (Rec. Doc. 80)**

Defendants insist that actions by the U.S. Department of Labor "suspended deadlines under ERISA," and thus, made their June 12, 2023 filing with the American Arbitration Association

timely. *See* Rec. Doc. 80-1 at 5–7. Defendants previously made this argument. *See* Rec. Doc. 58 at 3–4 (alterations in reply brief) (claiming "the Secretary of Labor may [and did] prescribe a period of up to one year that may be disregarded in determining the date by which any action is required or permitted to be completed under ERISA"). Further, this Court considered and rejected this argument: "Defendants' reply memorandum raises COVID-19-related argument for an extension to initiate arbitration. Contrary to their assertions, however, there was no executive agency action that suspended ERISA defaults beyond one year." Rec. Doc. 73 at 6 n.3. Further, by the very language of the U.S. Department of Labor's order, Title IV considerations—which include the provisions on default and withdrawal liability—are beyond its scope: "The Joint Notice and Notice 2020-01 (collectively 'Notices') provide relief for certain actions related to employee benefit plans required or permitted under Title I of the Employee Retirement Income Security Act of 1974 ('ERISA') and the Internal Revenue Code ('Code')." U.S. Dep't of Lab., EBSA Disaster Relief Notice 2021-01 (Feb. 2, 2021). Defendants attempt to lift their Title IV arbitration deadline through plaintiffs' invocation of jurisdiction and venue from Title I, but the argument is inapt. *See* Rec. Doc. 85 at 2. Their interim payment and arbitration initiation requirements remained.

And to that end, this Court previously reached the conclusion: "Neither USA nor AGS initiated arbitration before their statutorily defined deadlines." Rec. Doc. 73 at 6. Even considering defendants' additional arguments, pursuant to the flexibility Rule 54(b) provides, nothing material has altered our analysis of the COVID-19 extension. As inapplicable, no manifest error of law or fact is present, and defendants' motion for reconsideration of the Court's Order and Reasons at Record Document 73 regarding defendants' motion to compel arbitration (Rec. Doc. 80) must be rejected.

### C. Motion for Reconsideration of the Court's Order and Reasons at Record Document 76 regarding plaintiffs' motion for summary judgment (Rec. Doc. 81)

Defendants' motion for reconsideration of our grant of plaintiffs' summary judgment yields a similar result. Rather than on the basis of manifest error, defendants point to new evidence to support their contention that plaintiffs' withdrawal liability calculation runs afoul of ERISA provisions. *See* Rec. Doc. 81-1 at 1–2. Specifically, defendants argue that in a late-occurring deposition plaintiffs' expert actuary, Jeffrey S. Williams, revealed that "his calculations were based on the 'Segal Blend' a proprietary methodology developed by his employer, The Segal Company to unlawfully inflate in its clients' favor the amount of withdrawal liability assessed against the employer, here defendant USA." *Id.* at 2.

To support its reconsideration contention, defendants analogize *In re La. Crawfish Producers*, a Fifth Circuit reversal of a district court's refusal to reconsider its grant of summary judgment where movants submitted they did not dredge in a contested area but a later-conducted deposition revealed they had. *Id.* at 4–5 (discussing *In re La. Crawfish Producers*, 852 F.3d 456 (5th Cir. 2017)). Similarly, defendants claim that Mr. Williams's deposition alerted them to the use of the Segal Blend model, an admission that "carries considerably more weight than inferences drawn from documentary evidence purporting to support a certain fact." *Id.* at 5 (quoting *In re La. Crawfish Producers*, 852 F.3d at 468).

The record, however, undercuts defendants' new-evidence argument. As plaintiffs correctly note in their opposition to this motion for reconsideration, defendants knew of the Segal Blend calculations since April 12, 2022. *See* Rec. Doc. 86 at 8. On that date, plaintiffs responded to defendants' inquiry for more information on the withdrawal-liability claim, which began the sixty-day deadline by which either party could initiate arbitration—a deadline, as we have discussed, defendants missed. *See* Rec. Doc. 73 at 6. In that claim explanation, plaintiffs stated "the Plan's actuary, Segal, calculated that [USA] incurred withdrawal liability in the amount of

7

$2,833.389.00, which must be paid to the Plan in accordance with the following payment schedule." Rec. Doc. 1-8 at 3. Further, plaintiffs included the withdrawal-liability calculation, signed by "Jeffery S. Williams, Vice President and Consulting Actuary," and placed on Segal letterhead. *Id.* at 73–76 ("Any statutory interpretations on which these withdrawal liability determinations are based reflect Segal's understanding as an actuarial firm and are subject to the review and opinion of Fund Counsel for legal sufficiency."). Defendants did not awake to the use of Segal Blend methodology at Mr. Williams's October 30, 2023 deposition. Rather than the transformation of documentary inferences into certifiable facts as in *In re La. Crawfish Producers*, defendants possessed the pertinent facts from the outset, eighteen months before the actuary's deposition.

In fact, defendants challenged the Segal Blend model in its opposition to plaintiffs' motion for summary judgment, three weeks before the purportedly critical deposition. *See* Rec. Doc. 62 at 18 ("Without discussion or justification, NOE-ILA posits that this Court should simply adopt its so-called 'Segal Blend' computation of pension withdrawal liability as part of its summary judgment ruling . . . . NOE-ILA here offers no evidence to establish that its Segal Blend liability assessment comports with ERISA."). In sum, defendants' assertion that the "newly [] developed evidence" arrived when "Mr. Williams conceded at his October 30, 2023[] deposition that his calculations were based on the 'Segal Blend' a proprietary methodology developed by his employer" is contradicted by plaintiffs' correspondence and by defendants' own actions.

Most harmful to defendants' motion for reconsideration, however, is this Court's previous rejection of the withdrawal-liability argument:

> Matters associated with this withdrawal liability—such as whether a withdrawal has occurred and what the proper amount of liability is—are resolved through arbitration. 29 U.S.C. § 1401(a)(1) ("Any dispute between an employer and the

plan sponsor of a multiemployer plan concerning a determination made under sections 1381 through 1399 of this chapter shall be resolved through arbitration.").

. . .

ERISA provisions direct a district court's resolution of a defaulted employer that has not initiated arbitration: "[T]he amounts demanded by the plan sponsor under section 1399(b)(1) of this title *shall be due and owing on the schedule set forth by the plan sponsor*." U.S.C. § 1401(b)(1) (emphasis added). By the very language of the statue, therefore, an employer's challenge of the amount of withdrawal liability is effectively waived through its failure to arbitrate.

Although acknowledging the "harsh result," federal courts uniformly agree that failure to raise the defense of withdrawal liability amount in arbitration precludes the raising of the defense at the district court. *See, e.g., Tsareff v. ManWeb Servs., Inc.*, 794 F.3d 841, 850 (7th Cir. 2015) ("The result may be harsh, but the statute embodies a strong public policy that any dispute over withdrawal liability be submitted to arbitration.") (citation omitted, quotation cleaned up).

Rec. Doc. 76 at 6–7. Defendants again argue their entitlement to a defense against withdrawal-liability calculation. However, none of the cases marshalled from sister circuits reviewed a calculation method where arbitration was waived. *See* Rec. Doc. 81-1 at 9–10 (collecting cases). Further, the plain text from defendants' lead case, *Sofco Erectors, Inc. v. Trustees of the Ohio Operating Engineers Pension Fund*, contradicts defendants' contention: "ERISA prohibits employers from challenging a plan's assessment directly in federal court; the plan and the employer *must arbitrate their disputes first* and then appeal the arbitrator's decision." *Sofco Erectors, Inc. v. Trustees of the Ohio Operating Engineers Pension Fund*, 15 F.4th 407, 416 (6th Cir. 2021) (emphasis added); *see also Gastronomical Workers Union Loc. 610 v. La Mallorquina, Inc.*, 597 F. Supp. 2d 265, 271 (D.P.R. 2009) (dismissing an employer's "irrelevant and unavailing" counterclaim over the amount of a withdrawal liability assessment where employer did not timely submit the dispute to arbitration).

If defendants desired to contest the withdrawal-liability calculation, they could have done so through ERISA's compulsory arbitration scheme. Having failed to so initiate or to present newly

obtained material evidence, defendants' motion for reconsideration of the Court's Order and Reasons at Record Document 76 regarding plaintiffs' motion for summary judgment (Rec. Doc. 81) must be rejected. Unfortunately, by their own actions and inaction, defendants created their present predicament.

### D. Motion in limine to exclude Segal Blend evidence (Rec. Doc. 75)

For the foregoing reasons, defendants' similar arguments presented in their motion in limine to exclude Segal Blend evidence must be dismissed as moot. With no arbitration proceeding initiated, ERISA provisions provide the result: "[T]he amounts demanded by the plan sponsor under section 1399(b)(1) of this title shall be due and owing on the schedule set forth by the plan sponsor." 29 U.S.C. § 1401(b)(1).

New Orleans, Louisiana, this 7th day of March, 2024

SENIOR UNITED STATES DISTRICT JUDGE